Filed 8/5/26  In re D.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re D.H. et al., Persons Coming Under the Juvenile Court Law.

| | |
|---|---|
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E088081 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ1700464) |
| v. | OPINION |
| N.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Kelly L. Hansen, Judge. Conditionally reversed with directions.

Sara N. Taylor, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, and Larisa R. McKenna, Deputy County Counsel, for Plaintiff and Respondent.

1

## INTRODUCTION

N.H. (Mother) appeals from the juvenile court's order terminating her parental rights to her two daughters. Her sole argument is that the Riverside County Department of Public Social Services (DPSS) failed to discharge its duty of initial inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA)) and California's implementing provisions, and DPSS concedes the error.[1] We agree with the parties and therefore conditionally reverse the order terminating parental rights and remand with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *General Overview of the Dependency Proceedings*

The subjects of this appeal are Mother's two daughters (the girls)—D.H., who was born in January 2024, and T.S., who was born in December 2024, during the reunification period of D.H.'s dependency proceedings. The family came to DPSS's attention on March 8, 2024, when Mother and her boyfriend were arrested for being in possession of a stolen vehicle. Mother and three-month-old D.H. were living in an abandoned mobile home on commercial land and, when the police executed a search warrant, they found methamphetamine in the room where D.H. slept. The owner of the mobile home was unaware that anyone was living in it. A few days later, DPSS filed a dependency petition on D.H.'s behalf, alleging that she fell under section 300,

---

[1] Unlabeled statutory citations refer to the Welfare and Institutions Code.

subdivision (b), because Mother had a criminal history, had a history of substance abuse, and resided with people who used methamphetamine.

The juvenile court took dependency jurisdiction over D.H. in June 2024 and ordered family reunification services for Mother. At a combined hearing in March 2025, the court terminated Mother's reunification services for D.H.; took dependency jurisdiction over D.H.'s four-month-old halfsibling, T.S.; removed T.S. from Mother's care; and bypassed reunification services. At the girls' combined section 366.26 hearing in March 2026, the court found that the girls were likely to be adopted and terminated Mother's parental rights over each child.

B. *ICWA-Related Facts*

In her initial interview with DPSS in March 2024, Mother identified her mother (the maternal grandmother) as a potential relative caretaker for D.H. That same day, the maternal grandmother called the DPSS hotline to inquire about D.H.'s status. When the social worker returned her call, they discussed the child's placement.

Shortly after DPSS filed D.H.'s petition, Mother filed an ICWA-020 form denying any Indian ancestry, and she reaffirmed that denial on several occasions during the girls' dependency proceedings. In an April 2024 interview for D.H.'s jurisdiction and disposition report, Mother told the social worker that the maternal grandmother lived in Riverside and that she did not know the identity of her father (the maternal grandfather). Mother also reported that she had two sisters who lived nearby in Mira Loma.

According to DPSS's section 366.26 report, the social worker undertook the following steps in January 2026: (1) twice "attempted to contact the maternal

3

grandparents to obtain updates pertaining to potential Native American ancestry" but received no response; (2) mailed a letter to the "maternal grandparents" requesting "any information pertaining to potential Native American ancestry"; (3) contacted a "reported maternal aunt" who denied being a relative; and (4) made one attempt "to contact [Mother] and request additional information regarding relatives that would be able to provide information regarding ICWA" but received no response.

Mother filed a timely appeal.

DISCUSSION

Mother argues that DPSS failed to discharge its duty of initial inquiry by failing to make a meaningful effort to interview the maternal grandmother and the two maternal aunts about the girls' possible Indian ancestry. In a letter brief, DPSS "acknowledges that there were inadvertent omissions in conducting [the] initial inquiry" and states that it does "not oppose a conditional reversal and remand for the limited purpose of ensuring that a proper inquiry pursuant to the ICWA and related California statutes is accomplished." We agree with the parties that remand is appropriate for DPSS to complete its ICWA investigation.

"The issue of whether ICWA applies in dependency proceedings turns on whether the minor is an Indian child." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129.) To be an Indian child within the meaning of ICWA, a child must be either (1) a member or citizen of a federally recognized Indian tribe or (2) eligible for membership or citizenship in such a tribe and the biological child of a member or citizen. (25 U.S.C. §§ 1903(4), (8); 224.1, subd. (b)(1).) "The increased protections of ICWA apply 'where the court knows or has

4

reason to know that an Indian child is involved.' " (*Dezi C.*, at p. 1130, citing 25 U.S.C. § 1912(a) & 25 C.F.R. § 23.107(b)(2) (2024).)

"Section 224.2 codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1131.) The child welfare department and the juvenile court have "an affirmative and continuing duty" in every dependency proceeding "to inquire whether [the] child … is or may be an Indian child." (§ 224.2, subd. (a).) "This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' " (*Dezi C.*, at p. 1132.)

Section 224.2, subdivision (b)(2), specifies that once a child is placed into the temporary or protective custody of a child welfare department, the duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (See Cal. Rules of Court, rule 5.481(a)(1).) " '[E]xtended family member' " means "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c)(1) [adopting ICWA definition of " 'extended family member' "].) "While this duty of inquiry is sometimes referred to as the initial duty of inquiry, this is a bit of a misnomer, as the duty 'continues throughout the dependency proceedings.' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132.)

5

The juvenile court may find that ICWA does not apply to the proceedings if it finds "that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' " (*Id.* at p. 1141.) "[E]rror resulting in an inadequate initial … inquiry requires conditional reversal" because " '[u]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.' " (*Id.* at p. 1136.)

Applying those principles here, we agree with the parties that the record does not support a finding that DPSS made a meaningful effort to interview the three extended family members that Mother identified early on in D.H.'s dependency proceedings. As to the maternal grandmother, the record demonstrates that she was readily available because the social worker spoke with her on the phone in March 2024. There is no indication that the social worker asked the maternal grandmother about D.H.'s possible Indian ancestry during that conversation, and the only other documented attempt to interview her about ICWA appears in the section 366.26 report. That report indicates that in January 2026 the social worker tried by phone and mail to contact "the maternal grandparents." However, as Mother correctly points out in her opening brief, it is unclear what the social worker meant by maternal "grandparents" because this case involves only one maternal grandparent—the grandmother. In April 2024, Mother told the social worker that she did

6

not know the identity of the maternal grandfather. We therefore agree with Mother that it is unclear from the record whether DPSS made any attempt to interview the maternal grandmother about ICWA.

As to the two maternal aunts who Mother said lived in Mira Loma (which is located in Riverside County), there is no indication in the record that DPSS tried to locate and interview them. The section 366.26 report states that the social worker talked to an individual who was "reported" to be a maternal aunt, but the report contains no information about who that person was. And, because that person denied being a relative, she could not have been one of the maternal aunts mother mentioned. The description of the ICWA investigation in the section 366.26 report does not provide enough detail to determine the identity of the individuals the social worker tried to contact in January 2026. As a result, the record does not support a finding that DPSS made a meaningful effort to locate and interview the extended family members Mother identified to obtain whatever information they may have about the girls' possible Indian status. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

On remand, DPSS should make a meaningful effort to locate and interview the maternal grandmother and two maternal aunts, as well as any other extended family members who might be identified during the investigation.

## DISPOSITION

The order terminating parental rights to the girls is conditionally reversed. On remand, the juvenile court shall order DPSS to comply with the duty of initial inquiry (§ 224.2, subds. (a), (b)), and, if applicable, the duty of further inquiry (§ 224.2, subd.

7

(e)), and the duty to provide notice to the tribes (§ 224.3). If the court subsequently determines that DPSS has complied and that ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

CODRINGTON
Acting P. J.

MENETREZ
J.